WILLIAM A. BOLTON, APPELLANT, V. D. D. COBURN ET AL., APPELLEES.

FILED APRIL 18, 1907. No. 14,744.

1. Brokers: SALE OF REALTY: COMMISSIONS. .To entitle a recovery on a contract of brokerage for the purchase of real estate, it is essential that the broker establish that he procured a valid conveyance of the real estate, or an enforceable contract of sale of the same, before he is entitled to the commission stipulated in his contract with the purchaser.

2. Evidence examined, and *held* insufficient to show a right of recovery in the plaintiff.

APPEAL from the district court for Dixon county: GUY T. GRAVES, JUDGE. *Affirmed.*

*J. V. Pearson,* for appellant.

*M. H. Dodge, C. A. Irwin, C. A. Kingsbury* and *Charles A. Dickson, contra.*

OLDHAM, C.

This was an action for damages on a contract for the sale of real estate. There was a trial of the issues to the court and jury, and at the close of plaintiff's testimony a verdict was directed for the defendants, and judgment entered upon the verdict. To reverse this judgment the plaintiff has appealed to this court.

The involved issues in this controversy can be simplified by a statement of the facts on which plaintiff relied for a recovery in the court below. It appears from the testimony that in the month of October, 1904, plaintiff entered into an oral agreement with one Carl Schweichler for the purchase of 73 acres of land situated in Cedar county, Nebraska, for the agreed price of $35 an acre. That the land was to be conveyed subject to a lease upon a small portion thereof, on which $36 of rent reserved was to be assigned to the purchaser. This option was reserved to the plaintiff for the period of two weeks, and, not having availed himself of the purchase of the land, he approached the defendants, Coburn and Simpson, who were engaged in selling agricultural implements in the village of Laurel, and offered to sell them the land, called the "Schweichler 80," for $45 and acre. That, after some conversation with defendants, they asked him how much money it would take to swing the deal, and he informed them that it would take about $1,500 in cash and the remainder in trade. In further conversation between the parties, the defendants offered to trade for the land farm machinery and implements of the value of about $750, and to turn over notes owing to them, without recourse, of the value of about $1,000, and to assume the mortgage on the premises, and to pay the remainder in cash. At this time plaintiff, Bol-

ton, was indebted to the defendants on two notes, secured by a chattel mortgage on a corn sheller, and it was agreed between the parties that these notes would be returned as a part of the purchase price of the land. Plaintiff thereupon communicated with Schweichler, and, as he alleges, through his efforts induced Schweichler to enter into a written contract for the sale of the premises with the defendants on the 27th day of October, 1904. The contract provided for the sale of the real estate for $2,555, $200 of which was paid in cash by the defendants at the time the contract was signed. It further provided that the defendants should assign and deliver to Schweichler, without recourse, certain promissory notes held by them in the sum of $1,169, which notes were to be approved by W. T. Graham, a banker in the village of Laurel, and defendants were also to assume the mortgage on the premises in payment of the remainder due on the purchase price, and that on the first day of December Schweichler was to deliver to the defendants a warranty deed for the premises, subject to the mortgage assumed, and an abstract showing title perfect in the grantor. At the time the contract was entered into, defendants turned over to plaintiff, Bolton, a buggy of the value of $75 as part of the purchase price of the land. Before the deal was consummated, Mr. Graham, the banker, refused to approve the notes offered by the defendants to Schweichler, who thereupon returned to the defendants the $200 advanced on the contract, and paid them for the buggy delivered to plaintiff, Bolton, and rescinded the contract, and sold the land to another party. When the contract was rescinded, plaintiff demanded of the defendants his notes and the agricultural implements and live stock, which would have been delivered if the land deal had gone through. Thereafter the defendants began an action against the plaintiff to foreclose their chattel mortgage on the corn sheller, and plaintiff instituted this action for damages on his contract for the purchase of the Schweichler land.

Plaintiff urges two theories on which he predicates a

right of recovery against the defendants. The first theory is that he was the holder of an oral option for the purchase of the Schweichler land for $35 an acre, which he sold and assigned to the defendants for the agreed price of $766 in trade, being the difference between $35 an acre and $45 an acre, with the $36 rent reserved, and that, when he procured the signature of Schweichler to the contract of sale above set forth, defendants' obligation to plaintiff for the amount sued for became absolute. There are two formidable objections to plaintiff's right of recovery on this theory. The first is that an oral option, or contract of sale of real estate, is void under the statute of frauds; and the other objection is that plaintiff's own testimony shows that he never offered to assign any oral contract of purchase of the land to the defendants. In his examination on the witness stand, plaintiff testified as follows: "Q. Did you tell Coburn and Simpson, at any time before this contract was made, that you had a contract with Schweichler to buy this land? A. No, sir. Not a word." On redirect examination, answering questions propounded by his own counsel, he said: "Q. In your talk with Coburn and Simpson, before going after Mr. Schweichler to sign that contract, was anything said in regard to whether you owned this land or merely had the land to deal? A. No. Q. Do you know whether or not they knew at that time that you owned the land? A. I do not. Q. Did you tell them what land it was? A. I told them that it was the Schweichler 80."

The next theory on which plaintiff claims a right of recovery is that the evidence shows that plaintiff acted as the agent of the defendants in procuring the contract for the purchase of the land, and not as the agent of Schweichler in procuring the sale of the land. It is urged that section 10258, Ann. St. 1903, which provides that "every contract for the sale of lands between the owner thereof and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent," applies

only to agents or brokers who sell land for another, and not to those who are employed in such capacity for the purchase of land for another. Without determining the effect of this section of the statute upon a contract of brokerage for the purchase of lands, rather than for their sale, it is sufficient to say that, conceding that the contract for the purchase of the land for the defendants is not within the ban of the statute of frauds, the evidence offered by plaintiff is still insufficient to support a recovery on this theory of the case. The contract, which plaintiff procured Schweichler to sign was not enforceable at the instance of the defendants, but, on the contrary, it was a mere conditional offer to sell on the terms named, if the notes delivered to Schweichler by defendants were approved by Mr. Graham, the banker. It is plain that, when, as shown by the testimony, Mr. Graham refused to approve the notes offered, defendants could not have maintained an action for the specific performance of this contract against Schweichler. To entitle a recovery on a contract of brokerage for the purchase of real estate, it is essential that the broker establish that he procured a valid conveyance of the real estate, or an enforceable contract of sale of the same, before he is entitled to the commission stipulated in his contract with the purchaser. *Barber v. Hildebrand,* 42 Neb. 400; *Snyder v. Fidler,* 125 Ia. 378; *Hammond v. Crawford,* 66 Fed. 425. We therefore conclude that on neither theory offered was the plaintiff entitled to a recovery against the defendants, and that the district court was fully warranted in directing a verdict for the defendants at the close of plaintiff's testimony.

We recommend that the judgment of the district court be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.