STATE EX REL. FOOT, ATTORNEY GENERAL, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 5,678.)

(Submitted January 15, 1925. Decided February 14, 1925.)

[233 Pac. 957.]

*Supervisory Contract—Criminal Law—Suspension of Sentence—Revocation of Suspension—Commitment to Prison—When Unauthorized—State Board of Prison Commissioners—Jurisdiction.*

Criminal Law—Suspension of Sentence—Statute Applicable to Misdemeanors.
1.   Under section 12078, Revised Codes of 1921, the district court has authority to suspend sentence and place the defendant on probation whether found guilty of a crime or a misdemeanor.

Same—Judgment—Construction.
2.   A judgment (of conviction for a misdemeanor) must be so construed as to give effect to every word and part of it, including such effects and consequences as follow by necessary legal implication from its terms.

Same—Effect of Order of Suspension of Sentence.
3.   The effect of an order of the district court suspending the sentence of one convicted of a misdemeanor is to place him under the control and management of the state board of prison commissioners and subject to such rules and regulations as it may see fit to make.

Same—Revocation of Order of Suspension of Sentence—Commitment to Prison—When in Excess of Jurisdiction.
4.   Under section 12085, Revised Codes, the length of the period of probation of a convicted defendant cannot be more than the maximum term for which he might have been imprisoned. Defendant was convicted of a violation of the liquor laws and sentenced to the county jail for ninety days, the sentence being suspended. A year thereafter the court revoked the suspension and ordered him committed to jail. *Held,* on application for writ of supervisory control, that by its order suspending the sentence, jurisdiction over the person of defendant became vested in the state board of prison commissioners, that the court, therefore, was without authority to order him committed, and, the term of his imprisonment having expired, that the board could not do so.

3.   Power of court to suspend sentence and resentence after suspension, see notes in 8 **Ann. Cas.** 386; 14 **Ann. Cas.** 722; **Ann. Cas.** 1912B, 1192.

Power of court to suspend sentence or stay execution of sentence, see notes in 33 **L. R. A.** (n. s.) 112; 39 **L. R. A.** (n. s.) 242: **L. R. A.** 1915C, 1169, **L. R. A.** 1918C, 551.

Constitutionality of statute conferring on courts power to suspend sentence, see note in 26 **A. L. R.** 399.

Original application for writ of supervisory control by the State of Montana, on the relation of L. A. Foot, Attorney General, against the District Court of the First Judicial District in and for Lewis and Clark County and W. H. Poorman, a Judge thereof. Writ denied and proceeding dismissed.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* for Relator, submitted a brief; *Mr. Choate* argued the cause orally.

*Mr. J. P. Donnelly,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

On December 15, 1923, in the district court of Hill county, Charles Gies entered a plea of guilty to an information charging him with the crime of unlawfully selling intoxicating liquor, a misdemeanor; whereupon, as appears from the clerk's record of the proceeding, "it was ordered that said defendant be punished by imprisonment in the county jail of Hill county for a term of ninety days, and pay a fine of $200. * * * On recommendation of the county attorney, the jail sentence was then suspended." The defendant was then remanded to the custody of the sheriff, and on said day paid the fine of $200 and was released from custody.

On December 6, 1924, the court caused the following entry to be made in its minutes in said cause: "In this case, the minute entry of the clerk is corrected to speak the truth which was and is, that upon the date of pronouncing judgment in this case, to-wit, December 15, 1923, it was then and there the order of this court that the jail sentence imposed of ninety days' imprisonment in the county jail be suspended pending the good behaviour of the defendant. It appearing to the court that the defendant, Charles Gies, has violated the conditions under which his sentence was suspended; the clerk is hereby ordered to issue a commitment and place the same in the hands

of the sheriff for service.'' In accordance with the command of this minute entry the clerk of the court issued a commitment, by virtue of which the sheriff of Hill county took the defendant, Gies, into custody, and imprisoned him in the county jail to serve out the ninety-day sentence.

Claiming that such restraint and imprisonment by the sheriff was unlawful, on December 9, 1924, J. P. Donnelly, on behalf of Gies, filed in this court his petition for a writ of *habeas corpus,* which was granted; a writ was issued made returnable, before Honorable W. H. Poorman, one of the judges of the first Judicial District, on the twelfth day of December, 1924. To this writ the sheriff filed his return, setting forth that he held Gies in his custody under the commitment issued out of the district court of Hill county under the circumstances above related. The matter was submitted to Judge Poorman upon the petition and return, and, after argument of counsel, he made an order directing that Gies be forthwith released from such imprisonment by the sheriff of Hill county.

On December 16, 1924, the attorney general filed a petition in this court, reciting the above facts, alleging that although the order of Judge Poorman was made within jurisdiction, it was nevertheless erroneous, arbitrary and without warrant of law; that gross injustice to the state of Montana was threatened by said order in that the result of it was to nullify a lawful commitment issued by a court of competent jurisdiction, and to permit a person lawfully convicted of crime to avoid serving the sentence imposed. Deeming the circumstances sufficient to justify it, this court thereupon issued an order directed to the said district court of the first judicial district and to the Honorable W. H. Poorman, the judge thereof, commanding that they appear on the fifteenth day of January, 1925, and show cause why a writ of supervisory control should not issue directing said court and judge to set aside and annul the order so made on December 12, 1924. Upon the return day of this order the respondents appeared by counsel, and moved the court to dismiss the proceeding on the ground

that the facts stated in the petition are insufficient to move the court to the exercise of its supervisory power.

To support his contention that Judge Poorman erred in ordering the release of Gies, the attorney general argues: (1) That the courts of this state have no inherent power to permanently suspend sentences in criminal cases; (2) that our statutes do not authorize the courts to suspend sentences in misdemeanor cases; and (3) that even if the power to suspend sentences in misdemeanor cases does exist, there was no legal suspension of the sentence in this instance by reason of failure to comply with the statutory requirements.

We need not pause to consider whether our district courts [1] possess the inherent power to suspend permanently the execution of a sentence in a criminal case, for, during all the times here involved, section 12078, Revised Codes of 1921, was in full force, and it provides: "In all prosecutions for crimes or misdemeanors, except as hereinafter provided, where the defendant has pleaded or been found guilty, or where the court or magistrate has power to sentence such defendant to any penal or other institution in this state, * * * said court may suspend the execution of the sentence and place the defendant on probation in the manner hereinafter provided. * * * "

But the attorney general insists that in enacting this section the legislature did not intend that it should apply to misdemeanor cases where the imprisonment of the defendant is to be in a county jail, because the subsequent provisions for the supervision of one who has been given the benefit of a suspended sentence and placed on probation, appear to have application only to one whose confinement would be in the state prison or some other state penal institution, and in this connection refers to section 12080, Revised Codes of 1921, which is as follows: "Whenever a sentence to any penal or other institution in this state has been imposed, but the execution thereof has been suspended and the defendant placed on probation, the effect of such order of probation shall be to place said

defendant under the control and management of the state board of prison commissioners and he shall be subject to the same rules and regulations as applied to persons paroled from said institutions after a period of imprisonment therein''; and to section 12082, which in substance declares that, when a sentence is suspended and the defendant placed on probation, it is the duty of the clerk of the court to certify to the state board of prison commissioners, and to the institution to which the defendant would have been committed but for the suspension of the sentence, a copy of the judgment and the order for the suspension of the execution of the sentence, and ''upon entry in the records of the court of the order for such probation, the defendant shall be released from custody of the court as soon as the requirements and conditions fixed by the state board of prison commissioners have been properly and fully met.''

We cannot yield to this argument, and read the word ''misdemeanors'' out of this statute. It would seem that by using the words ''crimes and misdemeanors'' in section 12078, the legislature laid emphasis upon the fact that misdemeanors were included within its provisions, for the general word ''crimes'' comprehends both felonies and misdemeanors (sec. 10722, Rev. Codes 1921), and the repetition of ''misdemeanors'' places the legislative intent beyond question.

It may be that a plan for the supervision of a defendant who has been placed on probation after sentence to the county jail, other than placing him under the supervision and control of the state board of prison commissioners, would be more advantageous; but because the legislature saw fit to make the present plan is not a reason why we should say the provisions of section 12078 do not have application to those convicted of lesser offenses, as well as to those who have been convicted of felonies.

The next contention of the attorney general is that even **[2, 3]** though the statute authorizes the district court to suspend the execution of sentences in cases of misdemeanor, the

result was not attained in this case because the order of the
court which, after being "corrected to speak the truth" read
"that the jail sentence of ninety days be suspended pending
the good behaviour of defendant" does not meet with the
requirements of section 12078, which authorizes the court to
"suspend the execution of the sentence *and* place the defendant
on probation," in that it fails to place the defendant on
probation. It must be noted, however, that this provision
is in the conjunctive; it does not confer power to suspend the
execution of sentence without placing the defendant on proba-
tion, and the order of the court must be read with a view to
carrying the provisions of the statute into effect, if possible.

The rule is stated in 23 Cyc., p. 1101, thus: "A judgment
should be so construed as to give effect to every word and
part of it, including such effects and consequences as follow
by necessary legal implication from its terms, although not
expressed."

Since the court had no authority to suspend the execution
of the sentence without placing the defendant on probation
when the order of suspension was made, it followed "by
necessary legal implication" that the defendant was thereby
placed on probation, and we hold that this was the effect of the
court's order.

Under the provisions of section 12080 above quoted, the
effect of this order was to place the defendant under the control
and management of the state board of prison commissioners,
and subject to such rules and regulations as it might make;
likewise subject to arrest and commitment for failure to comply
therewith, and to have his term of probation terminated.
(Secs. 12083–12084, Rev. Codes 1921.)

The clerk of the court did not certify the judgment of con-
[4]  viction and order of suspension to the state board of
prison commissioners, or elsewhere, as required by section
12082. The court had made the order suspending the sentence
and placing the defendant on probation. It had performed its
full function. There was nothing further for it to do. The

defendant had paid the $200 fine imposed, and had been re-
leased from the custody of the court. There was nothing fur-
ther for him to do except to comply with such rules and regu-
lations as the state board of prison commissioners might fix for
his government during the period of his probation. The duty
of the clerk to certify the proceedings under section 12082
was purely ministerial. The fact that he failed to perform his
duty, and the fact that the state board of prison commissioners
may have failed to 'fix any rules for the government of the
defendant during his period of probation, could not affect
the status of the defendant.

In *Ex parte Slattery*, 163 Cal. 176, 124 Pac. 856, a defendant
was rearrested after the period of his probation had expired,
and it was sought to compel him to serve out his original
sentence, the state contending that the proceedings of the court
in suspending sentence and placing him on probation did not
comply with the statutory requirements. The 'supreme court,
however, brushed this contention aside, saying: "It will not
be held that by reason of any informality or irregularity of the
order so doing (placing him on probation) a defendant should
be made to suffer. He has no control over the form of the
order which the court issues and if during the probationary
period he has himself lived up to the requirements of the law
it would be manifestly unjust that he should be made to
suffer because of the court's error in any given particular."

When the court made the order of December 15, 1923, its
effect was to immediately place the defendant on probation and
under the jurisdiction of the state board of prison commis-
sioners, and thereafter that board alone had power to terminate
his probation. (Sec. 12084.) Section 12085 provides "that
the length of such period of probation shall not be less than
the minimum or more than the maximum term for which he
might have been imprisoned."

The failure of the clerk to perform his ministerial duty
could not nullify the order of the court, nor indefinitely
extend the period of defendant's probation. When the court

made the order of December 6, 1924, the maximum term for which the defendant might have been imprisoned had long since expired, and the state board of prison commissioners could not at that time have caused his arrest and confinement under the ninety-day sentence. So far as that sentence was concerned, the district court divested itself of jurisdiction over the defendant by the order which placed him' under the control of the state board, and so it had no authority to issue a commitment for his confinement on the original sentence.

It follows that the commitment issued under the court's order of December 6, 1924, was void, the confinement of Gies thereunder illegal, and that the order of Judge Poorman directing his discharge was proper.

The writ prayed for is denied and the proceeding dismissed.

*Dismissed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES HOLLOWAY and MATTHEWS and HONORABLE LYMAN H. BENNETT, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.