[File No. 7168]

THE HENRY S. GRINDE CORPORATION, a corporation, Respondent, v. OTTO W. KLINDWORTH, Appellant.

(44 NW2d 417)

598

Opinion filed July 8, 1950.  Rehearing denied Oct. 23, 1950

*Sinness & Duffy*, for appellant.

*Edgar P. Mattson*, for respondent.

KEHOE, District Judge.  This is an action to recover a broker's commission on account of a sale of real estate.  The case was tried to a jury in the District Court.  The jury returned a verdict in favor of the plaintiff.  The defendant moved for judgment notwithstanding the verdict or for a new trial on the grounds that the evidence was insufficient to justify the verdict.  The motion was denied and judgment was entered on the verdict.  The defendant has appealed from the judgment and the order denying the motion.

On July 16, 1947, the defendant signed, acknowledged and delivered to the plaintiff a listing contract under the terms of which he appointed the plaintiff as his exclusive agent to make a sale of Section 29, Township 148, Range 67, in Eddy County, North Dakota, for the price of $19,200.00, and agreed to pay the plaintiff $1920.00 for his services. The listing contract was to continue until September 1st, 1947, and thereafter until the expiration of 30 days after the date of the service of notice by the defendant upon the plaintiff revoking the latter's authority. Such notice was served on the 4th day of November, 1947, thus terminating the listing contract on the 4th day of the following December. The listing contract will be later considered more in detail.

On September the 1st, 1947, the defendant desiring to seed rye on some of the land and to plow and prepare the balance for the 1948 cropping season, it was then verbally agreed between him and the plaintiff that he might do such work and that if the land should be sold, the purchaser would be required to pay him therefor in addition to such $19,200.00 sale price. In the latter part of that month one Walter Krueger became interested in the purchase of the land and enlisted the help of one George Aljets to aid him in making contact with the defendant. On October 2nd following, the defendant and Krueger entered into a verbal agreement for the sale of the land to Krueger. At that time the defendant had the rye seeding partially done, and under such verbal agreement the defendant was to continue until he had seeded 200 acres of rye and was to plow the balance of the land and remove the rocks therefrom, and Krueger was to pay him, and did pay him at that time the sum of $2130.00 therefor. Under such agreement Krueger agreed to purchase the land and to pay $19,200.00 as the purchase price, paying $4600.00 thereof at the time and agreed to pay $5000.00 after January 1st, 1948, and the balance of the purchase price in deferred payments. No written contract was entered into at that time. The parties agreed that they would later execute one. The rye seeding, plowing and rock removal were completed by March 1948, but the record is silent as to the date of such completion. Immediately after entering into such verbal agreement the de-

fendant notified the plaintiff thereof and on the 8th day of October, 1947, the plaintiff caused such listing contract to be recorded in the office of the Register of Deeds of Eddy County. On the 8th of November, 1947, the plaintiff interviewed Krueger, showing him the listing contract, and advising him that he still had thirty days in which to sell the land. Krueger replied that he did not know whether his deal with the defendant was going through, that he did not care whether he got the land, and that the plaintiff might go ahead and sell it. On the 12th day of November, 1947, the plaintiff entered into a written contract with John J. Nelson and Lyman Moberg wherein the latter agreed to purchase the land. Such written contract was executed by the plaintiff as agent for the defendant. Notice of such sale was thereupon recorded in the said office of the Register of Deeds. The defendant then commenced an action in the District Court of Eddy County to quiet title to the land in himself against Walter Krueger, John J. Nelson, Lyman Moberg and the plaintiff herein as defendants. The Henry S. Grinde Corporation, as such defendant, and Nelson and Moberg interposed their joint answer praying that Klindworth be directed to convey the property to Nelson and Moberg and that The Grinde Corporation have judgment against Klindworth for the $1920.00 commission and interest. The issue therein was between Klindworth on the one side and The Grinde Corporation and Nelson and Moberg on the other. Krueger interposed his separate answer asking for the specific performance of his October 2, 1947 verbal contract for sale. The issue therein was between Klindworth on the one side and Krueger on the other. The action was tried in the District Court of Eddy County in March 1948, the Hon. George Thom, Jr., presiding. That action will be hereinafter known as the "prior action." Findings of Fact, Conclusions of Law and Order for Judgment were made therein on the 21st day of April, 1948, and judgment was entered thereon on the 6th day of May, 1948. In such judgment, the Court decreed that it in no way passed upon the rights claimed by such corporation for said commission, that such claim was not properly at issue and dismissed the same without prejudice to further action. The Court therein further found that

the written contract of sale made by said corporation, as agent, with Nelson and Moberg on November 12, 1947, was not binding upon Klindworth for the reason, among others, that it did not comply with the listing contract and decreed that said corporation, Nelson and Moberg, and each of them, had no estate or interest in, or lien or encumbrance upon or right or title to or against such land. The Court therein further found that Klindworth and Krueger raised no question as to the validity of the October 2nd verbal agreement of sale, waived all legal objections to its enforcement and expressed their willingness to perform it if permitted or ordered so to do by the Court and decreed that Krueger had an enforceable agreement for the purchase of such land and that he was entitled to have such agreement specifically performed on the terms mentioned in the decree by Klindworth executing a formal contract for the sale to Krueger.

The substance of the material parts of the listing contract is: I, (the defendant) hereby appoint you (the plaintiff) my exclusive agent to make a sale of (the above land) for the sum of $19,200.00, and you are hereby authorized to accept a deposit to be applied on the purchase price and to execute a binding contract for sale on my behalf. In case said property is sold or disposed of within the time specified, it is further agreed that you shall have and may retain from the proceeds arising from the sale, $1000.00 when the deal is made, $920.00 commission on the above price; and all of the consideration for which said property is sold over and above the price herein specified. In case said property is sold within said time, either through you or any other person, then in that case, I promise to pay you the hereinbefore described commission. This contract to continue until September 1st, 1947, and thereafter, but said agent's authority hereunder may be revoked by the owner upon thirty days notice in writing to that effect given to the agent.

The phrase "make a sale", coupled with the express authorization to the plaintiff to execute a binding contract of sale on behalf of the defendant, collect a down payment, and have and retain the major portion of the commission from the proceeds arising from the sale, and all received over $19,200.00, is incon-

sistent with the theory that the parties intended the imposition of an obligation on the defendant to pay in the absence of a binding contract of sale. Such phrase excluded liability on the part of the defendant until a binding contract of sale had first been effected during the life of the listing contract and in accordance with the terms thereof, as a result of the efforts of the plaintiff, or some other person. The plaintiff's attempt to execute such a contract on behalf of the defendant with its customers, Nelson and Moberg, evidenced the fact of its understanding as to the character of the contract of sale demanded and essential to enable it to recover.

In Cunningham v. Friendly, 70 Ore 222, 139 Pac 928, Cunningham sued upon a listing contract, the terms of which are substantially the same as those of the one here involved, reading:

"To Cunningham & Gray: For and in consideration of one dollar ($1.00), the receipt of which is hereby acknowledged, we hereby appoint you exclusive agent to make sale of the real property herein described . . . for the price of $25,000, upon the following terms: $12,500 cash, $12,500 secured by mortgage thereon for two years at 6 per cent. And you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for sale on our behalf. In case the above-described property is sold or disposed of within the time specified, we agree to make the purchaser a good and sufficient warranty deed to same, etc. . . . ; and it is further agreed that you shall have and may retain from the proceeds arising from such sale $675.00 commission on the above price."

The broker produced one Rocky, who, it was alleged, was willing and able to buy the property and introduced him to Friendly, to whom Rocky paid $1000.00 and verbally agreed to buy the property and complete his part of the agreement. Rocky later declined to go through with the deal. The Court held, "If there had been a contract in writing made with Rocky as was authorized by the contract with the plaintiff, so that defendant could have enforced specific performance on establishing his compliance, plaintiff might have been entitled to his commission; but as between the defendant and Rocky the latter was not bound

to purchase, and defendant had no remedy. Therefore the plaintiff did not make a sale of the lands."

In Gulart v. Azevedo, 62 Cal App 108, 216 Pac 405, the broker, Gulart, under a listing contract was given the exclusive agency to sell certain property and was authorized to contract with the purchaser, the Court held: "The listing contract was not a mere authorization to procure a purchaser ready, able, and willing to buy, but the plaintiff was employed to 'contract with the purchaser for the sale and conveyance' of the land. The plaintiff was appointed defendant's agent to execute a binding contract for the sale of the property rather than to find a purchaser with whom the defendant might so contract. . . . , and the fact that plaintiff attempted to make a binding contract of sale, throws light upon the intention of the parties."

Gilliland v. Jaynce, 36 Okla 563, 129 Pac 8, 46 LRA NS 129, following the same rule, the Court held: "We are inclined to believe that the weight of authority, as well as the better reason, supports the rule that, in order to recover his commission, the real estate agent must produce a purchaser who is ready, willing, and able to buy, and that the evidence of this fact must be such as would be recognized in a court of justice. The sale of real estate is an important step, which the law requires to be taken in writing, and it is explicitly provided that no contract or agreement for the sale of real estate shall be valid unless it is in writing."

In Sammons v. Paterson, 127 Ore 11, 270 Pac 499, the Court announced: "It is settled law that, to enable a broker to commission upon procuring a sale or exchange of real property, he must secure the execution of a valid, binding, enforceable contract." Quoting Cunningham v. Friendly, supra. Also see approving and applying the same rule: Lewis v. Dahl, supra; Ormsby v. Graham, 123 Iowa 202, 98 NW 724; Munroe v. Taylor, 191 Mass 483, 78 NE 106; Pfanz v. Humburg, 82 Ohio St 1, 91 NE 863; Patterson & Co. v. Temple, 94 Ind App 135, 180 NE 21; Cobb v. Warren, 64 Mont 10, 208 Pac 928; Jacobson v. Rotzien, 111 Minn 527, 127 NW 419, s.c. 127 NW 856; Bolton v. Coburn, 78 Neb 731, 111 NW 780; 12 CJSP 204, Sec 89.

The verbal agreement of October 2nd, 1947, between the de-

fendant and Krueger was not understood by them as constituting a binding contract. It was intended as the basis of a written contract of sale to be later executed by them. On being questioned as a witness in the trial Court in the present case whether a written agreement was at the time entered into, the defendant replied: "No, except that I jotted down the terms on which we were dealing; and it was understood between Krueger and Aljets and I that as soon as we had a little more time we would draw up the papers but the time never came until Mr. Grinde got into the picture and that, of course, held it up further."

The plaintiff in no manner aided in bringing about the meeting of the defendant and Krueger. It makes no claim that it did. It, however, contended, and in its complaint, alleged, that the defendant sold the land to Krueger on the 2nd day of October, 1947, and that it was, therefore, under the listing contract, entitled to recover the $1920.00 commission. That contention cannot be sustained. "The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

4. An agreement . . . for the sale of real property, or of an interest therein." Section 9–0604 NDRC of 1943.

Any right the plaintiff might have had to recover necessitated such verbal agreement having theretofore and during the life of the listing contract, become a binding contract either by having been executed in writing, or under the provisions of the second sentence of Section 47–1001 of the NDRC of 1943, which, after declaring invalid agreements for the sale of real property unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, provides: "This does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance."

Such verbal agreement was not executed in writing until after the trial of the prior action.

The only factors appearing in the record as bearing on the question of part performance, are part payment of the purchase price, possession and improvements. In the Findings of Fact in the prior action it was found that Krueger had paid $2130.00

for the rye planting, plowing and rock removal and *had thereby* acquired possession of the land and placed valuable improvements thereon, and had paid $4600.00 on the purchase price. There is nothing more present giving any indication as to the nature of the possession thus stated to have been acquired. Klindworth at the time of entering into the verbal agreement with Krueger was engaged in seeding the rye pursuant to the oral understanding had between him and the broker on September 1, 1947, that he might so do and prepare the land for the 1948 cropping season, and that any purchaser would be required to pay him therefor in addition to paying the purchase price of the land.

"The overwhelming weight of authority is to the effect that part payment of the purchase price is not in itself sufficient part performance to take a contract out of the statute of frauds and warrant the court in compelling specific performance thereof." Fried v. Lonski, 48 ND 1023, 188 NW 582; Brey v. Tvedt, 74 ND 192, 21 NW2d 49; Russell v. Briggs, 165 NY 500, 59 NE 303.

There is no evidence of any change of actual possession. Such Finding of Fact had, for reasons hereinafter stated, to be bottomed on the premise that Krueger acquired actual possession under his invalid verbal contract of sale, by the isolated act of paying Klindworth $2130.00 for the latter's completion of the farm work then in progress. The conclusion is erroneous. Actual possession may not be thus acquired. Not even may constructive possession.

"Constructive possession . . . is that possession which the law annexes to the legal title or ownership of property, when there is a right to the immediate actual possession of such property," 12 CJ 1304; 51 CJ 192; Playa de Flor Land & Improvement Co. v. U. S., 70 Fed Supplement 281, 340; Lofstad v. Murasky, 152 Cal 64, 91 Pac 1008.

Nor is constructive possession recognized as a factor of any force in determining whether acts of part performance, in any case, are sufficient to take it out of the statute of frauds. "Possession must be actual, open and notorious to serve as an act of part performance, and with such publicity as attends an open transfer of possession and in such a way that the fact itself

attests that parties have bargained." Muir v. Chandler, 16 ND 551, 113 NW 1038. The evidence must be clear and convincing. A mere constructive or technical possession is insufficient. Boese v. Childress, 83 Okla 60, 200 Pac 997.

There is nothing in the record to show what part of the $2130.00 may have been for the rye seeding, what part for the plowing, or what part for the rock removal, except as might be indicated in the contract of sale with Nelson and Moberg. A tract of land consisting of 640 acres was involved. That contract provided $1300.00 for 200 acres of rye seeding and $2.00 per acre for plowing. Under the verbal agreement with Krueger, Klindworth was to complete the rye seeding and was to plow the balance of the land and remove the rocks, thus leaving over 400 acres to plow. The cost thereof at $2.00 per acre exceeded $800.00, totaling more than $2100.00 for the rye seeding and plowing alone, and leaving a very insignificant sum, if any, for the rock removal.

Improvements made on land, in order to constitute part performance of an oral contract for its sale, have to be valuable, substantial and permanent. Improvements to take an oral contract out of the statute of frauds must be something more than a tenant at will who expects to occupy the premises for a number of years, would make for his own comfort and convenience. Adkins v. Adkins, 332 Ill 422, 163 NE 822; Flannery v. Woolverton, 329 Ill 424, 160 NE 762. Improvements made in the ordinary course of husbandry are insufficient as part performance. Emmel v. Hayes, 102 Mo 186, 14 SW 209, 11 LRA 323, 22 Am St Rep 769.

Improvements, such as papering of a residence, inside painting, doing fencing and erecting chicken coops on the land, were held not such improvements as have a substantial and permanent character, or as are beneficial to the freeholder; but such as are merely for the ordinary convenience and comfort in the use and occupation of the premises, and not more than might ordinarily have been made by the tenant at will. Price v. Lloyd, 31 Utah 86, 86 Pac 767, 8 LRA NS 870.

There is an additional reason for the improvements being insufficient as a part performance. "The right of a party who has,

done acts in part execution of a verbal contract, to call upon a court of equity to enforce it against the other, is subject to the same general restrictions as that of any other plaintiff in equity. . . . It must . . . appear that his position is such that an action at law for damages will not afford him adequate relief." French v. Mitchell, 92 Colo 532, 22 Pac2d 644. "Under the general rule that an act, in order to be sufficient as part performance of an oral contract, must work such change in the status or position of the party (complaining party) that it would be a fraud upon him not to enforce the contract, it has been held that improvements on land for which the promisee may reasonably be compensated in damages are not sufficient; and where the promisee himself has put a valuation on improvements they are thereby shown to be compensable and so insufficient as part performance within this rule." 58 CJ 1017, Sec 220. Pomeroy, Specific Performance of Contracts, 3d Ed Sec 129.

In Sullivan v. O'Neal, 66 Tex 433, 1 SW 185, the Court said, "There is, however, this difference to be noticed between advancing to the vendor money to be used by him in erecting an improvement on the land he has agreed to sell, and which he afterwards refuses to convey, and the use of the same money by the parol purchaser in erecting improvements on the land, which the vendor then refuses to convey. In the first case no equity arises from the advancement. The remedy at law is ample, and there is no occasion for the interposition of equity, while in the other case there is no remedy at law. Equity must interpose, or the statute to prevent frauds is used to perpetrate one."

Nor was Klindworth in a position to compel specific performance. The intervention of any special circumstances are not shown in the Findings of Fact by the Court in the prior action to have been present. There were no alterations in the physical features of the land. The rye seeding and plowing were in harmony with his pre-arranged plan. No interest in or to the land had passed to Krueger. Klindworth had $6730.00 of Krueger's money in his possession, more than adequate to cover any possible damage. His damages, if any, were ascertainable. His remedy at law was adequate. Peterson v. Nichols, 110 Wash 288,

188 Pac 498. As bearing on the same question see Haffner v. Dobrinski, U. S. 54 Law Ed 277.

At the time of the trial of the prior action the fee simple title to the land was vested in Klindworth. "An estate in fee simple is the greatest estate or interest which one can possess in lands." Bowen v. John, 201 Ill 292, 66 NE 357; Coleman v. Shoemaker, 147 Kans 689, 78 Pac2d 905. It embraces all the estates that may be carved from land. 31 CJS 18, Sec 8; Watson v. Dalton, 146 Neb 86, 20 NW2d 610; United States v. Sunset Cemetery Co., 132 Fed2d 163.

Had there been a binding contract of sale at that time between Klindworth and Krueger, its execution would have worked an equitable conversion, vesting the equitable title in Krueger and leaving the legal title in Klindworth as security for the payment of the balance of the purchase price. Clapp v. Tower, 11 ND 556, 93 NW 862.

The judgment in the prior action, in its first paragraph, decreed that Klindworth was the owner of the land in fee simple. That judgment by so decreeing, by implication at least, declared that there was no binding contract between Klindworth and Krueger as well as that no equitable conversion had been effectuated, and affirmed the conclusiveness of the inference that those parts of said judgment, decreeing that the defendant, Walter Krueger, had an enforcible agreement for the purchase of the land upon the terms named in the decree and that the defendant was entitled to have such agreement specifically performed by Klindworth executing a formal contract for the sale of the land to Krueger, were based on Klindworth and Krueger raising no question as to the validity of the verbal agreement of sale, their waiving all legal objections to its enforcement and expressing their willingness to perform it if permitted or ordered so to do by the Court.

"It is allowable to reason back from a judgment to the basis on which it stands, upon the obvious principle that, where a conclusion is indisputable, and could have been drawn only from certain premises, the premises are equally conclusive and indisputable with the conclusion. But such an inference

must be inevitable, or it cannot be drawn." Freeman on Judgments, Sec. 257.

The judgment could have well been rendered on a view taken by the trial judge that the factors of part performance were insufficient to take the verbal agreement out of the statute of frauds, as has been above observed, and based on Klindworth and Krueger raising no question as to the validity of the verbal agreement, their waiving all legal objections to its enforcement, and their willingness to perform it if permitted and ordered so to do by the Court.

The burden of proof was on the plaintiff to establish a binding contract of sale between the defendant and Krueger during the life of, and in accordance with the terms of the listing contract, either as the result of their execution of a written binding contract of sale, or their part performance of the verbal agreement sufficient to make it binding, thereby taking the verbal agreement out of the statute of frauds. 8 Am Jur P 1117, Section 222.

In conclusion the pivotal question herein involved is as to whether there was a binding contract of sale in force before the expiration of the listing contract. The inference is clear that the defendant and Krueger were ready and willing to consummate such contract. The inference is equally clear that the recording of the listing contract and notice of sale to Nelson and Moberg, circumstances which resulted in the action to quiet title, caused the delay of such consummation until the disposition of the prior action. But the fact, however, remains, that there was no binding contract until they executed one on the order so to do by the Court in the prior action, made after they had expressed their willingness to raise no question to the validity of the verbal agreement, waive all legal objections and to consummate a binding contract of sale if permitted and so ordered by the Court.

The Court, therefore, holds that neither Klindworth nor Krueger was at any time before the trial of the prior action in a position to compel specific performance of their verbal agreement of sale for the following reasons: 1. that there was

no binding contract of sale between them during the life of the listing contract; 2. that payment of part of the purchase price was not, in and of itself, sufficient part performance to take the contract out of the statute of frauds; 3. that there was no evidence of any change of actual possession; 4. that the rye seeding and plowing were not substantial and permanent improvements, that the rock removal was of very minor significance, that the seeding, plowing and rock removal were the result of work such as is done in the course of ordinary husbandry and as a tenant at will would do for his own convenience; 5. that evidence was insufficient to justify the verdict; and 6. that the remedy at law was adequate fully to compensate the defendant and Krueger and each of them.

The order and judgment appealed from are reversed and the cause remanded with directions that judgment be entered dismissing the action.

NUESSLE, C. J., and BURKE, MORRIS and CHRISTIANSON, JJ., concur.

GRIMSON, J., being disqualified, did not participate.

KEHOE, District Judge. On petition for rehearing. The plaintiff in a petition for rehearing bases it on the following contentions.

1st. The Court's misapprehension or mistake as to the facts.

2nd. A material mistake or error of law in the decision.

3rd. The Court's overlooking material admissions in the evidence.

4th. The Court's overlooking the question of the estoppel by judgment in the prior case.

5th. The Court's overlooking the question of the judgment being now res judicata.

Those contentions question the correctness of the construction, operation and effect in the main opinion, of the judgment rendered by Judge Thom in the prior action. The parts of the judgment involved are:

## "ORDERED, ADJUDGED AND DECREED:

### I.

That the plaintiff is the owner in fee simple of the following described premises situated in Eddy County, North Dakota, to-wit: Section Twenty-nine in Township One Hundred Forty-eight North of Range Sixty-seven West of the Fifth Principal Meridian.

### IV.

That the defendant Walter Krueger has an enforcible agreement for the purchase of said land upon the following terms and conditions:

Walter Krueger agreed to pay for such land the sum of $19,200.00, paying $4600.00 cash, $2150.00 for improvements and seeding made by plaintiff: To pay $5000.00 on January 1, 1948, and to pay the balance of such purchase price at the rate of $1000.00 per annum, beginning January 1, 1949, with interest on deferred payments due on January 1st of each year, and that Krueger shall have the privilege of paying off the balance of purchase price in either two or three years at his option; and

That said defendant is entitled to have the said agreement specifically performed, namely that plaintiff Klindworth execute a formal contract for the sale of said land to said Krueger, conditioned as follows: that up the payment of the further sum of $5000.00 by Walter Krueger that the balance is payable at the rate of $1000.00 per year, with interest at 5% per annum from January 1, 1948, with the specific provision that the defendant Krueger may, at his option, pay the balance in full in two years or three years; that upon payment of balance due by said Krueger that plaintiff be required to execute a conveyance of said land to said Krueger, conveying good and sufficient title to the same."

Such judgment and the Findings of Fact and Conclusions of Law on which it was based are in evidence.

"The party setting up the former judgment as an estoppel must assume the burden of proving that the particular point

or question as to which he claims the estoppel was in issue and determined in the former suit." 50 CJS page 410, Sec 843.

"If there is any uncertainty in the record as to the matters litigated, as, for example, if it appears that several distinct matters may have been litigated, on one or more of which the judgment was rendered, it is generally held that the whole subject matter of the action will be at large and open to a new contention, unless the party asserting the estoppel removes the uncertainty by extrinsic evidence showing the precise point involved and determined." 50 CJS Page 411, Sec 843.

"The Findings of Fact do not constitute an adjudication. It is the judgment itself which determines the effect and scope of adjudication." Stevens v. Minneapolis Fire Department Relief Assn., 219 Minn 276, 17 NW2d 642, 646. "The estoppel resides in the judgment and not in the explanatory reasons for rendering it." The Citizens' Bank of Emporia v. Brigham et al, 61 Kan 727, 60 Pac 754, 755.

"It is a well-established rule that it is only the decretal portion of a decree that is binding and becomes res adjudicata. The recital of facts in a decree is usual and is proper, but the rights of the parties are adjudicated, not by the recital of facts, but solely by the decretal portion of the decree. It is this and this only that becomes the final judgment of the court, from which an appeal will lie. Judge v. Powers, 156 Iowa 251, 136 NW 315, Ann Cas 1915B, 280; Chicago & N. W. R. Co. v. Sioux City Co., 176 Iowa 659, 158 NW 769; Christie v. Iowa Life Ins. Co., 111 Iowa 177, 82 NW 499." Higley v. Kinsman, Iowa, 216 NW 673, 676.

"The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court. If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." 49 CJS pages 862 and 863, Sec 436; Hofer v. Hofer, 35 Ohio L Abs 486, 42 NE2d 165, 166. The judgment "Should be so construed as to give affect to each and every part

of it, and bring all the different parts into harmony as far as this can be done by fair and reasonable interpretation." Lamb v. Major & Loomis Co., 146 NC 531, 60 SE 425; 15 Standard Enc. Procedure, p 92; 30 Am Jur·p 835, Sec 31; 49 CJS pages 863 and 864, Sec 436; McHenry v. Smith, 154 Kan 528, 119 Pac2d 493, 495; Ayers v. Smith, Ind App, 84 NE2d 185, 190; State v. District Court, 72 Mont 374, 233 Pac 957, 958; Whaley v. Matthews, 136 Nebr 767, 287 NW 205, 210; Gade v. Loffler, 171 Okla 313, 42 Pac2d 815, 818. "A judgment, plain and unambiguous in its terms, may not be modified, enlarged, restricted, or diminished by reference to the" Findings of Fact. 49 CJS Page 868, Sec 436.

As related in the main opinion, Klindworth and Krueger did not regard their verbal transaction of October 2, 1947 as constituting more than the basis for a contract of sale they then intended to reduce to, and execute, in writing at a later time. All the acts of Klindworth thereafter were consistent therewith, as were the acts of Krueger thereafter up to the commencement of the prior action. So too were those of the plaintiff up to November 2, 1947, and apparently thereafter until the commencement of this action.

Had the October 2nd transaction been a valid contract, it would have in and of its own force worked a revocation of the listing contract. "The transfer or sale of the subject-matter of a mere agency or a power of attorney not coupled with an interest revokes the authority of the agent." 2 Am Jur P 50, Section 57.

The listing contract was revocable. "It is clear that an agency in the execution of which the agent has no other interest than that which springs from his right to earn his compensation or commission is not coupled with an interest so as to be irrevocable." 2 Am Jur P 67, Section 84.

On October 8th, 1947, the plaintiff caused the listing contract to be recorded in the office of the Register of Deeds of Eddy County. On November 1, 1947, it notified the defendant that the listing contract was still in force. On November 8th, 1947, Krueger informed the plaintiff that he did not know whether his land deal with the defendant was going to go through and

that it might proceed to sell the land. On November 12th, 1947, the plaintiff, as agent of the defendant, executed a contract for the sale of the land to Nelson and Moberg. It then caused notice of that sale to be recorded in the office of the Register of Deeds. On December 2nd, 1947, the plaintiff, in writing, notified the defendant of said sale and requested him to execute a deed for delivery to the purchasers. The same counsel represented the plaintiff corporation and said purchasers in the trial of the prior action. Hence, because of the conflicting interest therein, between Krueger and said purchasers, the inference is unavoidable that the plaintiff corporation was not antagonizing the demands of Nelson and Moberg at such trial.

Thus the plaintiff, by its acts, placed its own construction on the validity, operation and effect of the October 2nd, 1947 transaction. Such record establishes that, during all of the times above stated, the plaintiff was by its acts contending that the listing contract was still in force, a contention necessarily tantamount to a declaration by the plaintiff that the October 2nd transaction was not a valid contract of sale.

The question arises as to what was the ground in the Finding of Fact on which the above quoted fourth paragraph of the Judgment was based. In such Findings, two such grounds appear. The first is that wherein Judge Thom found the verbal terms on which Klindworth was willing to sell, and Krueger to buy, the land, and found in connection therewith, that at the time of their verbal transaction in October, 1947, Klindworth was in the act of seeding rye and preparing the land for the 1948 farming season, that Krueger paid Klindworth $4600.00 on the $19,200.00 purchase price, that, in addition to the purchase price, Krueger agreed to, and did, pay Klindworth $2130.00 for such farm work and its completion, *and that Krueger by his isolated act of paying such $2130.00 for said work, acquired possession of the land and placed valuable improvements thereon.* The phrasing of the italicized clause in such Findings and the construction of its different parts with one another make the clause plain and specific. The clause definitely limits and circumscribes the manner in which it asserts that Krueger ac-

quired the alleged possession. Said manner is emphasized by its repetition in the Findings. Such limitation and circumscription leave no basis for any inference that there was any evidence at the trial of the prior action as to Krueger having acquired actual possession of the land. ". . . possession sufficient to constitute part performance is an actual possession as distinguished from a mere symbolic, fictitious, or constructive change of possession;" 49 Am Jur p 751, Section 443. For the reasons fully detailed in the main opinion, the alleged acquisition of possession and valuable improvements, either singly or together, are insufficient as a factor of any force in determining whether the acts of part performance were sufficient to take the October 2nd, 1947 transaction out of the statute of frauds. A judgment based on the first ground would have been erroneous.

But there is a second ground. That is the one wherein Judge Thom found the terms of the verbal transaction, as above set out, and further found:

"That Plaintiff Otto Klindworth, and Defendant Walter Krueger, are willing to perform such verbal contract if permitted or ordered so to do by the Court, both parties waiving any legal objections to enforcement of such contract."

The waiver and consent clause, too, is emphasized by the repetition of its substance in the Findings. The waiver and consent thus given, the terms being determined, constitute a valid and sufficient ground to sustain the judgment. 49 CJS page 308, Section 174.

"Where a general judgment may have been based upon two or more grounds, one of which would be erroneous, and the others proper, it is presumed the judgment was based upon the proper grounds." Western Paving Co. v. Board of Com'rs, 183 Okla 281, 81 Pac2d 652, 656.

Paragraph four of the judgment lends support to the view that there was no valid contract of sale between the parties in existence during the life of the listing contract, and the view that the paragraph is based on the waiver and consent of the parties. It is not in harmony with any other view. The paragraph decreed, first, that Klindworth execute a formal contract for sale of the land to Krueger, and, second, that, on Krueger's

compliance with its terms, Klindworth execute a conveyance of the land to him. If there was a prior valid contract of sale present, why was there not a direct decree of its performance rather than the decree of the fruitless act of its execution in writing as a condition precedent to its performance? The only reasonable and logical answer lies in the absence of a valid contract on the one hand and the presence of the waiver and consent of the parties on the other hand.

The judgment furnishes further convincing evidence that there was no prior valid contract of sale and that it was based on such waiver and consent. Had there been such a contract before the trial of the prior action, the equitable estate in the land would have, by operation of that contract, been vested in Krueger. But the judgment effectively and conclusively negatives any such status of the title by its recognizing and decreeing the whole title, both legal and equitable, to be in Klindworth.

The conduct of the parties in relation to the October 2nd transaction merits consideration in respect to what their interpreta- of the effect of such verbal transaction was.

As related in the main opinion, Klindworth and Krueger did not regard such verbal transaction as constituting more than the basis for a contract of sale they then intended to reduce to, and execute, in writing at a later time. All the acts of Klindworth thereafter were consistent therewith, as were the acts of Krueger up to the commencement of the prior action. So, too, were those of the plaintiff up to December 2, 1947, and apparently thereafter until the Judge Thom decision in the prior action.

Had the October 2nd transaction amounted to a valid contract, it would have in and of its own force worked a revocation of the listing contract. "The transfer or sale of the subject-matter of a mere agency or a power of attorney not coupled with an interest revokes the authority of the agent." 2 Am Jur p 50, Section 57.

The listing contract was revocable. "It is clear that an agency in the execution of which the agent has no other interest than that which springs from the right to earn his compensation or

commission is not coupled with an interest so as to be irrevocable." 2 Am Jur p 67, Section 84.

On October 8th, 1947, the plaintiff, after it had been notified of the negotiations between Klindworth and Krueger, caused the listing contract to be recorded in the office of the Register of Deeds of Eddy County. On November 1, 1947, it notified the defendant that the listing contract was still in force. On November 8th, 1947, Krueger informed the plaintiff that he did not know whether his land deal with the defendant was going to go through and that the plaintiff might proceed to sell the land. On November 12th, 1947, the plaintiff, as agent of the defendant, executed a contract for the sale of the land to Nelson and Moberg. It then caused notice of that sale to be recorded in the office of the Register of Deeds. On December 2nd, 1947, the plaintiff, in writing, notified the defendant of such sale and requested him to execute a deed for delivery to the purchasers. The same counsel represented the plaintiff corporation and said purchasers in the trial of the prior action. Hence, because of the conflicting interests therein between Krueger and said purchasers, it is apparent that the plaintiff corporation was espousing the cause of Nelson and Moberg at such trial.

Thus, the plaintiff, by its acts, placed its own construction on the validity of the October 2nd, 1947 transaction. Such record establishes that, at all times during the life of the listing contract, the plaintiff was by such acts contending that the listing contract was still in force, a contention necessarily tantamount to a declaration by the plaintiff that the October 2nd transaction was not a valid contract of sale.

In his decision as to the rights of the parties, Judge Thom was concerned alone with the status and rights of the parties as they had been shown to him upon the trial and as they were at the time he rendered judgment. "*In* equitable actions the right to a judgment is not limited to the facts as they existed at the commencement of the action, but the relief administered is such as the nature of the case and the facts, as they exist at the close of the litigation, demand." Sherman v. Foster, 158 NY 587, 593, 53 NE 504, 506; Peck v. Goodberlett, 109 NY 180,

189, 16 NE 350, 353; Haffey v. Lynch, 143 NY 241, 248, 38 NE 298, 299; Pond v. Harwood, 139 NY 111, 120, 34 NE 768, 770; Baker v. Salzenstein, 314 Ill 226, 145 NE 355, 358; Superior Oil & Gas Co. v. Mehlin, 25 Okla 809, 108 Pac 545, 549.

In other words, in his determination as to the transaction between Klindworth and Krueger, Judge Thom was concerned only with determining whatever controversy existed between them, as shown to him upon the trial, not as of the date of the commencement of the action, nor as of any other prior date, but as of the date of the determination thereof, including whatever admissions or waivers were made by the parties upon the trial.

The foregoing construction of the operation and effect of the Judge Thom Judgment gives literal meaning to its every part and brings its different parts into complete harmony. To construe it otherwise would necessitate, in order to preserve harmony in it, the engrafting of substantive provisions upon it. That, the Court is not permitted to do.

Rehearing denied.

NUESSLE, C. J., and BURKE, MORRIS and CHRISTIANSON, JJ., concur.